# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DONALD RAY JAMISON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-11-127-FHS-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Donald Ray Jamison requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on August 15, 1954, and was fifty-five years old at the time of the administrative hearing. He has a high school education and past relevant work as a waste water treatment plant operator, waste water plant treatment plant supervisor, salvage laborer and assistant automobile mechanic (Tr. 29, 31, 228). The claimant alleges inability to work since April 23, 2008, because of chronic obstructive pulmonary disease, atrial fibrillation in the heart, and a history of strokes (Tr. 142).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on April 24, 2008. The Commissioner denied his applications. ALJ Lantz McClain held an administrative hearing and determined that the claimant was not disabled in a written opinion dated December 2, 2009. The Appeals Council denied review, so this opinion is the Commissioner's final decision for purposes of appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), *i. e.*, he could lift/carry 10 pounds

frequently and 20 pounds occasionally and stand/walk/sit for six hours in an eight-hour work day (Tr. 13). The ALJ concluded that the claimant was able to return to his past relevant work as a waste water plant operator and waste water plant supervisor (Tr. 18). Thus, the ALJ concluded that the claimant was not disabled at step four (Tr. 19).

### Review

The claimant contends that the ALJ erred: (i) by finding that the claimant's COPD, back pain, and anxiety were non-severe impairments at step two; (ii) by failing to properly analyze the claimant's credibility; (iii) by failing to properly analyze the claimant's RFC at step four due to an improper analysis of the medical evidence of record; and (iv) by finding that the claimant could perform past relevant work. The undersigned Magistrate Judge finds the claimant's third contention persuasive.

The claimant began receiving treatment from Dr. Myra Gregory on November 13, 2008 (Tr. 427). At that appointment, the claimant weighed 123 pounds, and it was noted that he had fainting spells, COPD, dizziness, and an irregular heartbeat (Tr. 427). By March 17, 2009, the claimant was down to 109 pounds and the claimant was noted to be experiencing emotional problems, such as crying easily, exhibiting a flat affect, and acting nervous (Tr. 425). At this appointment, Dr. Gregory diagnosed claimant with anxiety and depression and prescribed Lorazapam (Tr. 425). Dr. Gregory also completed a Physical Residual Functional Capacity Questionnaire on October 2, 2009 (Tr. 433-37). Dr. Gregory included the following restrictions in her opinion: i) that the claimant could sit and/or stand for ten minutes at a time and less than two hours per eight-hour workday;

ii) that claimant would need to walk around for ten minutes every 90 minutes; iii) that claimant would need to take unscheduled work breaks; iv) that the claimant should rarely lift less than 10 pounds, look down, turn his head to the right or left, look up, hold head in a static position, twist, stoop, crouch/squat, climb ladders, or climb stairs; and v) that claimant's impairments would cause him to be absent from work more than four days per month (Tr. 433-36).

State reviewing physician Dr. Kenneth Wainner, M.D. completed a Physical Residual Functional Capacity Assessment on July 14, 2008 (Tr. 374-81). Dr. Wainner opined that claimant was capable of occasionally lifting 50 pounds, frequently lifting 25 pounds, standing/walking for six hours in an eight-hour workday, and sitting for six hours in an eight-hour workday (Tr. 375). Further, Dr. Wainner found that claimant should only occasionally climb ramps, stairs, ladders, ropes, and scaffolds and avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation and hazards, *i. e.*, machinery and heights (Tr. 376, 378).

The claimant testified that he quit working because he was frequently passing out (Tr. 33). He testified that he "can't hardly do anything" anymore and that his "heart starts racing real fast" when he walks (Tr. 34). The claimant previously weighed 155 pounds but was down to 119 pounds at the time of the administrative hearing (Tr. 35). He stated that he has no energy to do anything and that his memory has suffered due to a stroke (Tr. 39). During an interview conducted by interviewer J. Neal of the Social Security Administration, the claimant was noted to have difficulty with breathing,

understanding, coherency, talking, and answering (Tr. 139-40).  The claimant's mother Dortha Middleton also completed a Function Report – Adult in which she noted that the claimant spends his time on the couch or in bed, and he is too weak to cook meals for himself, do yard work, and drive (Tr. 161-65).  Mrs. Middleton also stated that the claimant has difficulties with lifting, standing, walking, stair climbing, and his memory (Tr. 167).

Medical opinions from a treating physician such as Dr. Gregory are entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'"  *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  Even if a treating physician's opinions are not entitled to controlling weight, the ALJ must nevertheless determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. §§ 404.1527; 416.927.  *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300.  The pertinent factors are:  (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or

not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01 [quotation marks omitted], *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). Finally, if the ALJ decides to reject a treating physician's opinion entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id*. at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Id*. at 1300 [quotation omitted].

The ALJ stated in his decision that he was assigning little weight to Dr. Gregory's opinion because she had only treated the claimant for physical problems, had only seen claimant on a few occasions, and "apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported" (Tr. 18). The record does not support the ALJ's contention that Dr. Gregory treated the claimant for physical problems only, *e. g.*, she diagnosed the claimant with anxiety and depression and prescribed medication to treat those conditions (Tr. 425), and in any event, the ALJ failed to properly analyze Dr. Gregory's opinion regarding the claimant's physical limitations by attributing it to simple reliance on claimant's subjective complaints. *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) ("In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of

contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*.") [quotation omitted] [emphasis in original].

Further, the ALJ failed to properly analyze the weight assigned to the opinions of the state physicians. He concluded that they were "consistent with the residual functional capacity noted above" and gave them great weight, but he wholly failed to include or discuss his reasons for *not* including the restrictions noted by state reviewing physician Dr. Kenneth Wainner. *Confere v. Astrue*, 235 Fed. Appx. 701, 703 (10th Cir. 2007) ("The ALJ mentions Dr. Heinbecker's assessment during his discussion of the evidence . . . but he does not state that he is rejecting any part of it and gives no indication as to why he would disregard [that part of] Dr. Heinbecker's conclusion that [was inconsistent with the ALJ's RFC determination]. . . . The ALJ could not have accepted and incorporated the opinions of the state agency physicians into his RFC because his RFC directly conflicts with [their] assessment.") [unpublished opinion]; *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others. An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability. . . . [T]he ALJ did not state that any evidence conflicted with Dr. Rawlings' opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of Dr. Rawlings' restrictions but not others. We therefore remand so that the ALJ can explain the evidentiary support for his RFC determination.").

Because the ALJ failed to properly analyze the medical evidence as outlined above, the decision of the ALJ must be reversed and remanded. If the ALJ's subsequent analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the undersigned Magistrate Judge PROPOSES a finding that correct legal standards were not applied and the decision of the Commissioner is therefore not supported by substantial evidence, and accordingly RECOMMENDS that the decision of the Commissioner be REVERSED and the case REMANDED to the ALJ for further proceedings consistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 11th day of September, 2012.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma